1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE K. COLBERT, | Case No.: 1:10-cv-00250-DAD-SAB (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| P. CHAVEZ, et al., | (ECF Nos. 52-65, 68, 69-70) |
| Defendants. | OBJECTIONS DUE WITHIN THIRTY DAYS |

## I.

## INTRODUCTION

Plaintiff George K. Colbert, appearing pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on February 16, 2010. (ECF No. 1.) On April 11, 2013, the complaint was screened and Plaintiff subsequently notified the Court that he was willing to proceed on those claims found to be cognizable. (ECF Nos. 18, 19.) On June 26, 2013, the district judge dismissed those claims not found to be cognizable. (ECF No. 21.) This action is proceeding on Plaintiff's claims against 1) Defendants Chavez, Lindsey, Emard, Flores, and Ramirez for excessive force in violation of the Eighth Amendment; 2) against Defendant Farnsworth for failure to protect and deliberate indifference in violation of the Eighth Amendment; and 3) Defendants Chavez, Lindsey, Emard, Flores, and Ramirez for retaliation in

1

1    violation of the First Amendment.[1]  (ECF No. 21.)  On April 18, 2014, Defendant Doucan was

2    dismissed from the action pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.  (ECF

3    No. 38.)

4         On May 4, 2015, Defendants filed a motion for summary judgment.[2]  (ECF Nos. 52-65.)

5    Plaintiff filed an opposition to the motion for summary judgment on May 20, 2015.  (ECF No.

6    68.)  Defendants filed a reply and objections to Plaintiff's opposition on May 28, 2015.  (ECF

7    Nos. 69-70.)

8                                   **II.**

9       **MOTION FOR SUMMARY JUDGMENT LEGAL STANDARD**

10        Any party may move for summary judgment, and the Court shall grant summary

11    judgment if the movant shows that there is no genuine dispute as to any material fact and the

12    movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks

13    omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's

14    position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to

15    particular parts of materials in the record, including but not limited to depositions, documents,

16    declarations, or discovery; or (2) showing that the materials cited do not establish the presence or

17    absence of a genuine dispute or that the opposing party cannot produce admissible evidence to

18    support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider

19    other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R.

20    Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir.

21    2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

22        Defendants do not bear the burden of proof at trial and in moving for summary judgment,

23    they need only prove an absence of evidence to support Plaintiff's case.  In re Oracle Corp.

24    Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S.

25

26    [1] The Court notes that the order adopting stated that all Eighth Amendment claims were for excessive force, however the discussion in the screening order found that the claim against Defendant Farnsworth was for failure to

27    intervene and deliberate indifference by failing to provide medical treatment.  (ECF No. 18 at 5.)

28    [2] Defendants also filed a request for judicial notice.  (ECF No. 54.)  However, the Court finds that the materials for which judicial notice is sought are unnecessary to the resolution of the instant motion.

317, 323 (1986)).  If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial."  In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323).  This requires Plaintiff to "show more than the mere existence of a scintilla of evidence."  Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

However, in judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), cert. denied, 132 S.Ct. 1566 (2012).  The Court determines *only* whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se prisoner.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

### III.

### COMPLAINT ALLEGATIONS

Plaintiff alleges that on September 5, 2008, Correctional Officer Ybarra sexually assaulted him in the shower.  (Compl. 4,[3] ECF No. 1.)  After Plaintiff was placed back in his cell, Defendants Chavez, Lindsey, and Emard came to his cell and ordered him out.  (Id.)  Defendants told Plaintiff that if he told or talked to anyone, they would be back for him.  (Id. at 6.)  Plaintiff filed out a sick call slip and complained to mental health about what had happened.  (Id.)

On September 6, 2008, Lt. Peterson intercepted the sick call slip; and Plaintiff was transferred to 6 block.  (Id. at 6.)  Defendant Farnsworth performed a sex kit physical upon Plaintiff.  (Id.)  Plaintiff asked Defendant Farnsworth to call someone to help him because custody officers were planning to hurt him over a lawsuit he filed against correctional officers.

---

[3] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

1  (Id.) Defendant Farnsworth laughed and told Plaintiff "you get what you get." (Id. at 6-7.)

2  Around 2:00 p.m., psychiatry came around and Plaintiff told them that correctional

3  officers were trying to hurt him. (Id. at 7.) The doctor told Defendants Ramirez and Emard that

4  if they assaulted Plaintiff it would be reported. (Id.) Defendant Emard was escorting Plaintiff up

5  the stairs and pushed Plaintiff causing him to fall and hit his face on the rail. (Id.)

6  At 4:00 p.m., Defendant Ramirez came with the dinner tray and refused to feed Plaintiff.

7  (Id. at 7.) Plaintiff called for the building sergeant to help him, but Defendants Chavez, Lindsey,

8  Emard, Flores and Ramirez came and told Plaintiff his ass was dead. Id. They instructed the

9  officer in the gun tower to open Plaintiff's cell door saying they were about to have some fun.

10 (Id.) Plaintiff had seen the correctional officers in their cell extraction gear and two nurses

11 looking on from the rotunda. (Id. at 7-8.) Plaintiff told Defendant Chavez not to do this to him,

12 but the officers came in and began beating him. (Id. at 8.)

13 Plaintiff alleges that he fell to the ground with his hands over his head. (Id. at 8.)

14 Defendant Ramirez came into the cell and began kicking Plaintiff. (Id.) Defendant Flores hit

15 Plaintiff in the head and body with his baton. (Id.) Defendant Emard stated "this is personal" as

16 he stomped on Plaintiff's back. (Id.) Defendant Lindsey hit Plaintiff in the stomach and

17 squeezed his genitals. (Id.) As Plaintiff was removed from the cell, Sgt. Doucan hit him so hard

18 in the back of the head that Plaintiff almost lost consciousness. (Id.) Plaintiff contends that

19 Defendants staged a medical emergency to come into his cell to assault him. (Id.)

20 As Plaintiff was being walked out of the building, Defendant Chavez kicked his leg

21 causing him to stumble. (Id. at 8.) Defendant Lindsey hit Plaintiff in the head bruising his

22 temple and tackled him to the ground bruising his shoulder. (Id.) Sgt. Doucan called a medical

23 emergency. (Id. at 9.) Defendant Farnsworth and LVN Macot were standing and watching

24 during the alleged assault. (Id.) Plaintiff was taken to a holding cell and was bleeding from his

25 mouth, head, shoulder, and legs. (Id.) Defendant Farnsworth refused to give him medical

26 attention. (Id.)

27 The following day, Plaintiff stopped a nurse and asked for help. (Id. at 9.) The nurse told

28 him that he had to wait for Defendant Farnsworth to receive treatment. (Id.) Plaintiff was

1  eventually found guilty at a 115 hearing.  (Id. at 10.)

2  **IV.**

3  **UNDISPUTED FACTS**

4       1.      On September 5, 2008, Plaintiff completed a Healthcare Services Request Form

5  complaining of sexual assault by nonparty Officer Ybarra.

6       2.      On September 6, 2008, Plaintiff was transferred from Housing Unit 4 where

7  Ybarra was assigned to Housing Unit 6.

8       3.      When Defendant Emard was returning Plaintiff to his cell after his mental health

9  counseling, Plaintiff slipped or fell on the stairs.

10      4.      On September 6, 2008, during the 7:00 p.m. institutional count in Housing Unit 6,

11 Defendant Ramirez saw that the window to Plaintiff's cell had been covered with paper.[4]

12      5.      Defendants Emard, Lindsey and Flores formed a response team with Defendant

13 Ramirez.

14      6.      Defendants Ramirez, Emard, Lindsey and Flores told Plaintiff to come out of his

15 cell, and Plaintiff refused to come out.[5]

16      7.      Plaintiff was convicted of battering Defendant Flores inside his cell.

17      8.      Officers responding to a medical emergency were trained to use the shield as a

18 first resort to restrain the inmate per CCI's medical-emergency procedure.   If they were

19

20 [4] Plaintiff disputes this fact stating Defendant Ramirez did not see a window cover.  (ECF No. 4.)  Defendants object
   on the ground that Plaintiff lacks personal knowledge.  Affidavits or declarations used in support of or opposition to
   a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in
21 evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P.
   56(c)(4).  Defendants' objection is sustained.

22      Plaintiff has not presented any evidence regarding whether or not there was a cover over his window and
23 his statement regarding what Defendant Ramirez saw is not based on personal knowledge.  Further, during his
   deposition, Plaintiff admitted that he covered the window to his cell.  (Deposition of George K. Colbert 43:1-3.)

24 [5] Plaintiff disputes this fact.  However in his deposition, Plaintiff admitted that he was told to come out of his cell
25 and refused to come out.  (Depo. of George K. Colbert 31:21-32:32:6.)  The sham affidavit rule arises when the
   declarant's declaration contradicts earlier deposition testimony.  Nelson v. City of Davis, 571 F.3d 924, 927 (9th Cir.
26 2009); see Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266-67 (9th Cir. 1991) (holding a court may discount a
   "sham" declaration that "flatly contradicts" prior deposition testimony, and has been provided for the sole purpose
   of creating a genuine issue of material fact.)  The underlying rationale of the sham affidavit rule is that a party may
27 not "manufacture a bogus dispute with himself to defeat summary judgment."  Davis, 571 F.3d at 928 (emphasis in
   original).  Plaintiff cannot defeat summary judgment by presenting a declaration that contradicts his prior deposition
28 testimony.  Radobenko v. Automated Equipment Corp., 520 F.2d 540, 544 (9th Cir. 1975).

1   unsuccessful with the shield, a greater degree of force was permitted commensurate with the
2   inmate's level of resistance.

3          9.     The purpose of CCI's medical-emergency response procedure is to provide the
4   inmate a prompt medical evaluation and treatment and thereby preserve life.

5          10.    On September 17, 2008, Plaintiff filed an administrative grievance (log no. CCI-
6   08-02353) against Defendants Chavez, Lindsey, and Emard for "stag[ing] a fake medical
7   emergency" and coming into Plaintiff's cell and assaulting him.

8          11.    On October 23, 2008, Plaintiff filed an administrative grievance (log no. CCI-08-
9   02664) challenging the battery conviction and naming Officers Randall ("for battery"), Mendoza
10  (for investigating the battery charge and Plaintiff's defenses even though he allegedly
11  "responded to the attack"), and P. Chavez (for "ordering me assaulted, and then denying due
12  process . . . all because I filed a sexual harassment claim on 9-5-08.")

13         12.    Plaintiff filed no grievance about the facts alleged in the complaint naming
14  Defendants Ramirez, Flores, or Farnsworth.

15         13.    Plaintiff filed habeas petitions about the September 6, 2008, incident in Kern
16  County Superior Court in March 2009, the Fifth District Court of Appeal in June 2009, the
17  Supreme Court of California in July 2009, the United States District Court for the Eastern
18  District of California in October 2009, and the United State Court of Appeals for the Ninth
19  Circuit in November 2010.

20                                        **V.**

21                                   **DISCUSSION**

22         Defendants move for summary judgment on the grounds that 1) Plaintiff did not exhaust
23  his administrative remedies for his claims against Defendants Flores, Ramirez, Emard, and
24  Farnsworth; 2) Defendants have presented evidence to show that the minimal amount of force
25  used was appropriate under the circumstances; 3) Plaintiff's medical records prove that
26  Defendant Farnsworth provided him with adequate care for his minimal injuries; 4) Defendants
27  actions furthered the legitimate penological interests of ensuring Plaintiff's health and safety and
28  maintaining order and discipline; and 5) Defendants are entitled to qualified immunity.

**A.      Exhaustion under the Prisoner Litigation Reform Act**

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   42 U.S.C. § 1997e(a).   This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion.   Jones, 549 U.S. at 216; Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014).   "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)."   Albino, 747 F.3d at 1166.   Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust.   Id.

Defendants must first prove that there was an available administrative remedy and that Plaintiff did not exhaust that available remedy.   Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing Albino, 747 F.3d at 1172) (quotation marks omitted).   The burden then shifts to Plaintiff to show that something in his particular case made the existing and generally available administrative remedies effectively unavailable to him.   Williams, 775 F.3d at 1191 (citing Albino, 747 F.3d at 1172) (quotation marks omitted).   The ultimate burden of proof on the issue of exhaustion remains with Defendants.   Id. (quotation marks omitted).

The California Department of Corrections and Rehabilitation (CDCR) has an administrative grievance system for prisoners to appeal any departmental decision, action, condition, or policy having an adverse effect on prisoners' welfare.   Cal. Code Regs. tit. 15, § 3084.1.   Prior to 2011, the process was initiated by submitting a CDC Form 602 describing the problem and the action requested, tit. 15, § 3084.2(a), and appeal had to be submitted within

fifteen working days of the event being appealed or of the receipt of the unacceptable lower level decision, tit. 15, § 3084.6(c).   Up to four levels of appeal may be involved, including the informal level, first formal level, second formal level, and third formal level, also known as the Director's Level.   Tit. 15, § 3084.5.   In order to satisfy section 1997e(a), California state prisoners are required to use this process to exhaust their claims prior to filing suit.   Woodford v. Ngo, 548 U.S. 81, 85-86 (2006); McKinney, 311 F.3d at 1199-1201.   On January 28, 2011, the inmate appeals process was modified and limited to three level of review with provisions allowing the first level to be bypassed under specific circumstances.   Cal. Code Regs. tit. 15, § 3084.7.

It is undisputed that Plaintiff filed two grievances, CCI-08-02353 and CCI-08-02664, regarding the incidents alleged in his complaint.   The issue is whether those grievances exhausted all the claims raised in his complaint.

1.    Grievance No. CCI-08-02353

On September 7, 2008, Plaintiff submitted a grievance stating he made a "complaint against a C/O for sexual misconduct with mental health and a Lt. Peterson intercepted the medical slip and sent me to six building where three of the C/Os . . . involved, Sgt. Chavez, C/O Lindsey, C/O Emard.   They stage[d] a fake medical emergency and came into my cell [and] assaulted me."   (ECF No. 62-2 at 4.)   Plaintiff stated that he had now been assigned to another unit and was not being provided with food or supplies.   (Id.)   Plaintiff requested food and an investigation into why correctional officers have the power to stop an inmate from being fed. (Id.)

2.    Grievance No. CCI-08-2664

On October 23, 2008, Plaintiff submitted a grievance after receiving a final copy of the rules violation report for which he was convicted of battery on a peace officer.   (ECF No. 62-3 at 3.)   Plaintiff stated that he had a staff complaint against Officer Randall for battery pending. (Id.)   Plaintiff complained that Investigative Employee ("I.E.") Mendoza could not be his I.E. because he responded to the alarm on the 115 and escorted Plaintiff to the management cell, did not provide Plaintiff with supplies or food or allow him to shower because of the battery

1   allegations.  (Id.)   Additionally, Plaintiff complained that the officer works with one of the
2   officers in the building who wrote the report.  (Id.)  Plaintiff requested that the 115 be dismissed
3   as it was a cover up for Defendant Chavez ordering Plaintiff assaulted and then denying him due
4   process by not calling his witnesses because Plaintiff made a sexual assault claim on September
5   5, 2008.  (Id.)

6           3.       Plaintiff's Failure to Exhaust Administrative Remedies

7           Defendants contend that Plaintiff has failed to exhaust his administrative remedies other
8   than his excessive force and retaliation claims against Defendants Chavez, Emard, and Lindsey.
9   Plaintiff replies that his grievances were sufficient to exhaust administrative remedies on all his
10  claims in this action.

11          a.       **Eighth Amendment Denial of Medical Care Claims**

12          The purpose of exhaustion of administrative remedies is two-fold.  First, it allows an
13  agency to correct mistakes in the programs that are administered prior to being hauled into
14  federal court.  Woodford, 548 U.S. at 89.   Secondly, administrative exhaustion promotes
15  efficiency by allowing claims to be addressed more efficiently by the agency rather than
16  involving the court.  Id.  "A grievance suffices to exhaust a claim if it puts the prison on adequate
17  notice of the problem for which the prisoner seeks redress."  Sapp v. Kimbrell, 623 F.3d 813,
18  824 (9th Cir. 2010).

19          In this instance, Plaintiff's grievances do not raise any claim that he failed to receive
20  medical care following the alleged assault on September 6, 2008.  Plaintiff only claims that he
21  was denied food and supplies following his escort to the management cell.  Accordingly, there
22  was nothing to place prison officials on notice of Plaintiff's claim that he was denied medical
23  care.

24          The Court finds that Plaintiff failed to exhaust his administrative remedies regarding his
25  claim that Defendant Farnsworth was deliberately indifferent by failing to provide medical care
26  after the September 6, 2008 incident.  Therefore, the Court recommends that the medical care
27  claims against Defendant Farnsworth be dismissed for failure to exhaust administrative remedies.
28

1          **b.      Use of Force and Retaliation Claims**

2          i.      Cell Extraction Claim

3          Defendants also contend that Plaintiff has failed to exhaust his administrative remedies

4  against Defendants Flores and Ramirez for their use of force and Defendant Farnsworth for her

5  failure to protect him because only Defendants Chavez, Lindsey, and Emard were mentioned in

6  his grievance.

7          While Defendants argue that Plaintiff's failure to mention the names of the individual

8  defendants in his grievance does not exhaust his administrative remedies, at the time that

9  Plaintiff filed this grievance, the regulations did not require the employee to be named in a

10  grievance.   The regulations in force at the time, only required the inmate to "describe the

11  problem and the action requested."  Sapp, 623 F.3d at 824 (quoting Cal Code Regs. Tit. 15,

12  §3084.2(a)).   Therefore, the "grievance suffices if it alerts prison officials to the nature of the

13  wrong for which redress is sought."  Sapp, 632 F.3d at 824 (quoting Griffin v. Arpaio, 557 F.3d

14  1117, 1120 (9th Cir.2009)).

15          Plaintiff grieved that Defendants Chavez, Lindsey, and Emard staged a fake medical

16  emergency and came into his cell and assaulted him.  (ECF No. 62-2 at 4.)  This is sufficient to

17  place prison officials on notice that Plaintiff was grieving the actions taken during the cell

18  extraction on September 6, 2008.  Although Plaintiff only named three of the officers involved,

19  investigation into the claims would reveal the names of all officers involved in the cell

20  extraction.  Therefore, Plaintiff's grievance was sufficient to exhaust his administrative remedies

21  for the excessive force and failure to protect claims based on the cell extraction that he contends

22  was staged.

23          Further, in his grievance, Plaintiff alleged that the cell extraction was staged after

24  Plaintiff made a complaint against another officer for sexual assault.  This complaint was

25  intercepted by a sergeant which resulted in Plaintiff being sent to another building where the

26  officers then staged the cell extraction.  Unless necessary to provide notice of the harm being

27  grieved, a grievance does not need to include legal theories.  Griffin, 557 F.3d at 1120.  Nor is it

28  necessary for a grievance to contain the elements of the legal claim, it must just alert the prison

1    of the problem and facilitate its resolution.  Id.  Plaintiff's grievance is sufficient to place prison

2    officials on notice that Plaintiff was grieving retaliation for filing a complaint against an officer.

3         Accordingly, the Court finds that Plaintiff did exhaust his administrative remedies

4    regarding all claims based on the use of force during the cell extraction.  The Court recommends

5    that Defendants' motion to dismiss the excessive force and retaliation claims against Defendants

6    Ramirez and Flores and failure to protect claim against Defendant Farnsworth be denied.

7              ii.     Stair Incident

8         On September 6, 2008, prior to the cell extraction, Plaintiff alleges that while Defendant

9    Emard was escorting him up the stairs, Defendant Emard pushed Plaintiff causing him to fall.

10   Defendants contend that Plaintiff failed to exhaust administrative remedies for this claim.

11        Although this incident occurred on the same day as the cell extraction, Plaintiff's

12   grievances do not include any mention of excessive force outside of the cell extraction.  Nothing

13   in the grievances filed by Plaintiff would serve to place prison officials on notice that Defendant

14   Emard had used excessive force on Plaintiff prior to the cell extraction incident.  For that reason,

15   the Court finds that Plaintiff failed to exhaust administrative remedies for his claim that

16   Defendant Emard pushed him while escorting him up the stairs.  The Court recommends that this

17   claim be dismissed for failure to exhaust administrative remedies.

18        **B.    Use of Force Claims**

19        Defendants contend that Plaintiff's allegation that excessive force was used against him is

20   factually unsupported and seek summary adjudication of the claims.   Plaintiff replies that

21   Defendants are merely submitting differing facts that are based on a lie.  Plaintiff contends that

22   Defendants staged a medical emergency in order to assault him in his cell.

23        To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison

24   conditions must involve "the wanton and unnecessary infliction of pain."  Rhodes v. Chapman,

25   452 U.S. 337, 347 (1981).  In order to be held liable, each defendant must have personally

26   participated in the deprivation of the plaintiff's rights.  Ashcroft v. Iqbal, 556 U.S. 662, 677

27   (2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  When a prison official stands

28   accused of using excessive physical force in violation of the cruel and unusual punishment clause

of the Eighth Amendment, the question turns on whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm.  Hudson v. McMillian, 503 U.S. 1, 7 (1992) (citing Whitley v. Albers, 475 U.S. 312, 320-21 (1986)).  In determining whether the use of force was wanton and unnecessary, it is proper to consider factors such as the need for application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of the forceful response.  Hudson, 503 U.S. at 7.

A prison official's use of force to maliciously and sadistically cause harm violates the contemporary standards of decency.  Wilkins v. Gaddy, 130 S. Ct. 1175, 1178 (2010).  However, "[n]ot 'every malevolent touch by a prison guard gives rise to a federal cause of action."  Gaddy, 130 S. Ct. at 1179 (quoting Hudson, 503 U.S. at 9).  Factors that can be considered are "the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted."  Whitley, 475 U.S. at 321; accord Marquez v. Gutierrez, 322 F.3d 689, 692 (9th Cir. 2003).  Although the extent of the injury is relevant, the inmate does not need to sustain serious injury.  Hudson, 503 U.S. at 7; Wilkins, 130 S. Ct. at 1178-79.  The Eighth Amendment's prohibition on cruel and unusual punishments necessarily excludes from constitutional recognition de minimus uses of physical force.  Hudson, 503 U.S. at 9-10.

Prison officials have a duty to take reasonable steps to protect inmates from physical abuse.  Farmer v. Brennan, 511 U.S. 825, 833 (1994); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005).   A prisoner's rights can be violated by a prison official's deliberate indifference by failing to intervene.  Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995).  Deliberate indifference occurs where prison officials know of and disregard a substantial risk of serious harm to the plaintiff.  E.g., Farmer, 511 U.S. at 847; Hearns, 413 F.3d at 1040.  However, an officer can only be held liable for failing to intercede if he had a realistic opportunity to intercede and failed to do so.  Cunningham v. Gates, 229 F.3d 1271, 1289-90 (9th Cir. 2000).

Defendants contend that it is undisputed that a medical emergency had been called in Plaintiff's cell.  However, Plaintiff contends that no such medical emergency existed and that the

cell extraction was staged so that the Defendants could assault Plaintiff. Furthermore, even if there was a medical emergency that does not address the question of whether the force used during the cell extraction was excessive.

Defendants also argue that since Plaintiff refused to come out of his cell the force used was appropriate. Although it is undisputed that Plaintiff refused to come out of his cell, Plaintiff contends that more than the minimal force which Defendants assert was used in extracting him from the cell. Plaintiff alleges that he fell to the ground with his hands over his head. (ECF No. 1 at 8.) While he was on the ground, Defendant Ramirez began kicking him; Defendant Flores hit him in the head and body with his baton; Defendant Emard stated "this is personal" as he stomped on his back; and Defendant Lindsey hit him in the stomach and squeezed his genitals. (Id.) Plaintiff also alleges that as he was walking out of the building, Defendant Chavez kicked his leg causing him to stumble; and Defendant Lindsey hit him in the head bruising his temple and tackled him to the ground bruising his shoulder. (Id.) A factual dispute exists as to the amount of force that was used and whether the force used by Defendants was reasonable in the circumstances.

Defendants further contend that the medical record does not support Plaintiff's claims that he received the injuries alleged. However, Plaintiff states that he was refused medical treatment after the incident which would be consistent with the lack of documentation of his injuries. Even in the days following the cell extraction, Plaintiff states that medical employees refused to treat him stating that only Defendant Farnsworth could provide him with medical care. Further, although the extent of the injury is relevant in the inquiry, the inmate does not need to sustain serious injury for there to be a violation of the Eighth Amendment. Hudson, 503 U.S. at 7; Wilkins, 559 U.S. at 38.

Defendants argue that the window to Plaintiff's cell was papered and he was refusing to come out of his cell. While Plaintiff admits that he had papered the window of his cell, during his deposition he stated that he removed the paper when told to do so by Defendant Chavez. (Depo. of George K. Colbert 43:1-5.) Plaintiff also testified that he was looking out the window and saw the extraction team coming to remove him from his cell, indicating that at the time the

extraction team came to his cell they were able to see inside his cell and would be know that there was no medical emergency.  (Id. at 44:5-23.)  Although Defendants state that Plaintiff's window was covered at the time of the cell extraction, a dispute exists as to whether the window was covered.

Finally, Defendants argue that no force was used on Plaintiff until he lunged forward to resist the escort, but Plaintiff contends that he fell to the ground with his hands over his head as the officers entered his cell and began assaulting him.  Defendants argue that Plaintiff gave conflicting testimony on whether he attacked the officers entering his cell.  Defendants point to Plaintiff's deposition testimony.  Plaintiff appeared for deposition on December 18, 2014.  (ECF No. 64-1.)  Plaintiff was questioned regarding his actions during cell extraction.

> Q.      Did you try to defend yourself?
> A.      No·.
> Q.      Did you hit anyone?
> A.      No, I did not.
> Q.      Did you punch anyone?
> A.      No, I did not.
> Q.      You didn't hit Officer Flores?
> A.      I didn't hit -- I didn't hit Officer Flores at all.
> Q.      Okay.
> A.      I mean, they got shields, and you cannot hit nobody.  A shield is a socket.
> Q.      How many of the officers had shields?
> A.      One is coming in -- the first one coming in got the shield.  The one behind him got the club.  So all of that, I·swung and all that, I must have hit the shield or hit him or whatever, that's --
> Q.      So you did swing?
> A.      Huh?
> Q.      You did swing?
> A.      No, I did not swing, but they said I swung.  But either way, he got the shield and came in and then cracked my head.  So once he hit me with the shield, I had to back up.  I mean, he cracked me with the club in the head.  So then I go down because it was a hard hit.  And so, after I lay down, they cuffed me, and then they are going to start hitting me. . . .

(ECF No. 64-1 at 45:15-46:16.)  While Defendants argue that Plaintiff has provided conflicting testimony regarding whether he took a swing at the officer, the Court does not find that the testimony is so unambiguous that a reasonable trier of fact would have to find that Plaintiff admitted to swinging at the officer.

Although Defendants argue that there is no evidence that force was used "maliciously and sadistically for the very purpose of causing harm," Plaintiff's testimony is such evidence.

1  Making credibility determinations, weighing the evidence, and drawing legitimate inferences are

2  functions for the jury, not the judge.  Bravo v. Santa Maria, 665 F.3d 1076, 1083 (9th Cir. 2011).

3  Plaintiff has met his burden of establishing that a genuine issue of material fact exists to preclude

4  entry of judgment on his failure to protect and excessive force claims.  The Court recommends

5  that Defendants' motion for summary judgment on the excessive force and failure to protect

6  claims be denied.

7          **C.      Qualified Immunity**

8          Defendants argue that they are entitled to qualified immunity for the use of force during

9  the cell extraction.  The doctrine of qualified immunity protects government officials from civil

10  liability where "their conduct does not violate clearly established statutory or constitutional

11  rights of which a reasonable person would have known."  Pearson v. Callahan, 555 U.S. 223, 231

12  (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  To determine if an official is

13  entitled to qualified immunity the court uses a two part inquiry.  Saucier v. Katz, 533 U.S. 194,

14  200 (2001).  The court determines if the facts as alleged state a violation of a constitutional right

15  and if the right is clearly established so that a reasonable official would have known that his

16  conduct was unlawful.  Saucier, 533 U.S. at 200.

17          The district court is "permitted to exercise [its] sound discretion in deciding which of the

18  two prongs of the qualified immunity analysis should be addressed first in light of the

19  circumstances in the particular case at hand."  Pearson, 555 U.S. at 236.  The inquiry as to

20  whether the right was clearly established is "solely a question of law for the judge."  Dunn v.

21  Castro, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting Tortu v. Las Vegas Metro. Police Dep't.

22  556 F.3d 1075, 1085 (9th Cir. 2009)).  In deciding whether officials are entitled to qualified

23  immunity, the court is to view the evidence in the light most favorable to the plaintiff and resolve

24  all material disputes in the favor of the plaintiff.  Martinez v. Stanford, 323 F.3d 1178, 1184 (9th

25  Cir. 2003).

26          Defendants contend that they are entitled to qualified immunity because they did not

27  violate Plaintiff's rights.  However, as discussed above, Plaintiff has raised a genuine issue of

28  material fact as to whether the use of force was reasonable in the circumstances presented to the

1   officers.

2   Defendants also argue that they are entitled to qualified immunity because they were

3   acting pursuant to prison policy where a medical emergency exists.  However, Plaintiff has

4   alleged that no medical emergency existed and that officers staged the medical emergency to

5   assault him.  Defendants argue that when an officer is unable to make visual contact with an

6   inmate and the inmate is not responding calling a medical emergency is not an obviously

7   unlawful response.  However, Plaintiff has testified that he uncovered the window of his cell

8   when requested to do so by Defendant Chavez and that he was able to see out of the window as

9   the extraction team approached to remove him from his cell.  Viewing the evidence in the light

10  most favorable to Plaintiff and resolving all material disputes in his favor, officers were able to

11  see into his cell.  Plaintiff was up and moving around and the officers could see that there was no

12  medical emergency.

13  Further, there is a factual dispute as to the amount of force that was actually used during

14  the cell extraction.  Even if officers could reasonably have used force to extract Plaintiff from his

15  cell, Plaintiff has alleged force beyond that described by the policy.  Given the disputes as to

16  whether a medical emergency actually existed and the amount of force used, the Court cannot

17  find as a matter of law that it would have been unclear to Defendants that their conduct was

18  unlawful.  Therefore, the Court finds that Defendants' are not entitled to qualified immunity on

19  the excessive force and failure to protect claims.

20  **D.   Retaliation Claims**

21  Defendants argue that Plaintiff's retaliation claims against Defendants Chavez, Lindsey,

22  Emard, Flores, and Ramirez fail for lack of proof.  "Prisoners have a First Amendment right to

23  file grievances against prison officials and to be free from retaliation for doing so."  Watison v.

24  Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th

25  Cir. 2009)).  "Within the prison context, a viable claim of First Amendment retaliation entails

26  five basic elements: (1) An assertion that a state actor took some adverse action against an

27  inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the

28  inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a

1  legitimate correctional goal." <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005).

2       Retaliatory motive may be shown by the timing of the allegedly retaliatory act and

3  inconsistency with previous actions, as well as direct evidence. <u>Bruce v. Ylst</u>, 351 F.3d 1283,

4  1288-1289 (9th Cir. 2003). However, mere speculation that defendants acted out of retaliation is

5  not sufficient. <u>Wood v. Yordy</u>, 753 F.3d 899, 904-905 (9th Cir. 2014) (affirming grant of

6  summary judgment where no evidence that defendants knew of plaintiff's prior lawsuit or that

7  defendants' disparaging remarks were made in reference to prior lawsuit).

8       During his deposition, Plaintiff stated that on September 5, 2008 he had just returned

9  from court and was bragging that he had taken correctional officers to court for beating up

10 inmates. (Depo. of George K. Colbert 24:1-6.) Plaintiff alleges that it was at this time that

11 Officer Ybarra called him a bitch and sexually assaulted him. (<u>Id.</u> at 24:5-11.) Plaintiff states

12 that after he was assaulted by Officer Ybarra, Defendants Chavez, Lindsey and Emard came by

13 his cell and told him that if he told or talked to anyone they would be back for him. (ECF No. 1

14 at 6.) In his deposition, Plaintiff stated that on September 5, 2008, Defendants Chavez, Lindsey,

15 Emard, Ramirez, and Flores, none of whom worked in his housing unit, all showed up in a pack

16 and told him that he needed an attitude adjustment. (Depo. of George K. Colbert 30:1-2, 30:16-

17 31:22.)

18      A threat of retaliation is sufficient to allege adverse action if a person of ordinary

19 firmness would be chilled from exercising their rights under the First Amendment. <u>Brodheim</u>,

20 584 F.3d at 1270. Taking the facts in the light most favorable to Plaintiff, a reasonable trier of

21 fact could find that multiple prison guards coming to his cell and threatening to come back for

22 him if he reported the incident with Officer Ybarra was intimating that some form of punishment

23 would follow if Plaintiff reported the incident. <u>Id.</u> at 1270.

24      Further, Plaintiff contends that after he completed a Healthcare Services Request Form

25 complaining of sexual assault by Officer Ybarra, (U.F. 1), which was intercepted by Lt. Peterson,

26 he was transferred to a different housing unit, (ECF No. 1 at 6). After he was transferred,

27 Plaintiff alleges that he "slipped" going up the stairs while Defendant Emard was escorting him,

28 and Defendant Emard told him that mental health staff would not always be there to protect him.

1   (Id. at 38:14-21.)   Later that same day, when Plaintiff complained that he was not being fed,

2   Defendant Chavez said "something smart and attitude that encouraged his underlings that yeah,

3   we're going to get you."  (Id. at 41:11-15.)

4          According to Plaintiff, that same evening when Defendants Lindsey, Emard, Flores, and

5   Ramirez came to his door as part of the cell extraction team they told him that his behind was

6   dead.  (ECF No. 1 at 7.)  They told the tower officer to open the door and that they were about to

7   have some fun.  (Id.)  When Plaintiff asked Defendant Chavez not to let them do this to him,

8   Defendant Chavez told the tower officer to open the door and told the correctional officers to

9   beat Plaintiff down.  (Id. at 8.)

10          Plaintiff is contending that the adverse action, an assault, was taken against him because

11   he filed a complaint against Officer Ybarra.  Defendants Lindsey, Flores, Ramirez, and Emard

12   state they did not have any knowledge of Plaintiff's complaints against Officer Ybarra until after

13   this lawsuit was served.  However, the fact that the incident at issue here occurred the day

14   following the alleged assault by Officer Ybarra and the alleged threat to Plaintiff if he reported

15   the incident is circumstantial evidence of retaliatory intent.  Bruce, 351 F.3d at 1288.  Plaintiff's

16   allegations that the same defendants who threatened him if he reported the incident and the cell

17   extraction was staged the following day are sufficient evidence to create a triable issue as to

18   whether Defendants Lindsey, Flores, Ramirez, Emard, and Chavez conducted the cell extraction

19   because of Plaintiff's complaint that Officer Ybarra assaulted or harassed him.

20          Defendants argue that the force used during the cell extraction served legitimate

21   penological goals.  While it is not denied that prison officials may have a legitimate penological

22   goal in extracting an inmate from his cell in some circumstances, Defendants here are arguing

23   that a medical emergency existed which is a disputed fact.  Defendants are not entitled to

24   summary adjudication where there is a genuine issue of material fact as to whether the action

25   taken was in retaliation for the exercise of First Amendment rights.  Bruce, 351 F.3d at 1289.

26          Finally, Defendants argue that the exact same action would have been taken regardless of

27   whether Plaintiff filed a complaint against Officer Ybarra, however this disregards the substance

28   of Plaintiff's complaint.  Plaintiff is complaining that there was no medical emergency and

1  Defendants staged the event in order to assault him.  The Court finds that a genuine issue of

2  material fact exists and Defendants' motion for summary adjudication on the retaliation claim

3  should be denied.

**VI.**

**CONCLUSION AND RECOMMENDATION**

Based on the foregoing, IT IS HEREBY RECOMMENDED that Defendants' motion for summary judgment should be GRANTED IN PART AND DENIED IN PART as follows:

1.   The Eighth Amendment claim against Defendant Farnsworth be DISMISSED for failure to exhaust administrative remedies;

2.   The Eight Amendment claim against Defendant Emard for use of excessive force by pushing Plaintiff on the stairs on September 6, 2008, be DISMISSED for failure to exhaust administrative remedies;

3.   The motion for summary adjudication of the excessive force and retaliation claims against Defendants Ramirez and Flores and failure to protect claim against Defendant Farnsworth for failure to exhaust administrative remedies be DENIED;

4.   Defendants' motion for summary adjudication of the excessive force and failure to protect claims be DENIED; and

5.   Defendants' motion for summary adjudication of the retaliation claim be DENIED.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within thirty (3-) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

1

2

3

IT IS SO ORDERED.

4

Dated:   __**January 29, 2016**__

5

UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28